LOTTINGER, Judge.
This is a suit in workmen’s compensation filed by Lazine Dupree, as petitioner, against Charles Jordan Company and his insurer, United States Fidelity and Guaranty Company, as defendants. The claim is for total and permanent disability under the act as well as for penalties and attorney fees. The Lower Court awarded .judgment in favor of petitioner and against defendant for total and permanent disability, however, it disallowed the penalties and attorney fees. The defendants have taken this, a suspensive appeal. The petitioner has answered the appeal again asking for penalties and attorney fees, as well as an increase in expert witness fees which was allowed one of the medical witnesses below.
The wrong parties defendant were named in the original petition filed herein, however, petitioner later amended his petition so as to substitute the proper parties defendant.
The facts show that on May 15, 1964, the date of the accident, petitioner was working for Charles Jordan Company, a subcontractor of Brice Building Company. The defendant United States Fidelity and Guaranty Company, is the workmen’s compensation insurer for Charles Jordan Company. While so working, petitioner was engaged in the filling of buckets with concrete and passing them up to a co-worker on a scaffold, who in turn passed them to another co-worker on a higher scaffold, who in turn passed them to another co-worker standing some sixteen feet above the ground at the top of the highest scaffold. Concrete from these five gallon buckets was poured from the buckets into the top of the trimming on the wall of the building which was under construction. The buckets were then handed down to the worker on the next level of scaffold, who in turn handed them to the worker on the second level of scaffold, who in turn turn handed them to the plaintiff who was standing on the ground.
While engaged in this activity, the worker on the top scaffold erroneously thought that the worker beneath him had his hand under a bucket and turned it loose. The bucket fell a distance of some sixteen feet striking the plaintiff on the top of his head, jerking his head forward, buckling his knees, and cutting his scalp.
There is no dispute as to the occurrence of the accident as above stated. The defendant, however, claims that the bucket which fell on the head of petitioner was *838 empty. There is no question that the bucket had been emptied of its contents of concrete, however, the evidence reflects that even after emptying the bucket some concrete would have remained therein. Regardless of the fact of whether there was any concrete remaining in the bucket, there was an accident causing injuries to petitioner while he was working on the job, and the only real question before us is as to the extent of the disability of petitioner. Petitioner was paid compensation through July 31, 1964.
Petitioner was initially treated by Dr. Collins P. Lipscomb, the company doctor, who diagnosed his injury as a laceration and contusion of the scalp, with a severe sprain of the back muscles and a probable concussion. In his regular report to the insurance company, dated July 6, 1964, Dr. Lipscomb estimated the petitioner would be able to resume work on August 1, 1964. However, in a report dated June 19, 1964, Dr. Lipscomb had stated that there was no indication as to when petitioner would be able to rctuim to work.
Dr. Fanancy Anzalone examined the petitioner on two occasions, May 22, 1964 and June 9, 1964. Pie treated him for ailments other than what petitioner received in the accident except he took one X-ray.
On July 31, 1964, Dr. Dean H. Echols, a neurosurgeon, examined petitioner and he felt that the petitioner had recovered from a mild concussion and lacerations of the scalp. Dr. Echols was also of the opinion that petitioner had sprained his neck and possibly his lower back in the accident, and that he probably had mild rheumatoid arthritis of the lower spine but that he should be able to return to his regular work. Pie had a Dr. Bergeron take X-rays of petitioner and reported to him. There were certain statements in the medical report of Dr. Echols, however, which indicates that his examination was inconclusive, he stated that further examinations and tests would be required to determine the extent of the injuries to petitioner.
Petitioner was next seen by Dr. I. 1. Rosen, one of the two doctors who testified at the trial. He treated petitioner from September 7, 1964, through August 20, 1965. On his initial examination he found that petitioner’s left paraspinal muscles along the sacro-iliac joints were spastic. Dr. Rosen was of the opinion that since petitioner was free of any symptoms prior to the accident and by virtue of the fact that he limped and had complaints which were consistent with the X-ray findings of scoliosis of the ilium adjacent to the left sacro-iliac joint, that there was some relationship between the trauma and the complaints of petitioner. Pie indicated that the accident aggravated a pre-existing arthritic condition. He was of the definite opinion that petitioner was not a malingerer, and he found objective symptoms that substantiated his complaints of pain. Dr. Rosen was of the opinion that the treatment to petitioner improved his condition somewhat, however, not to the extent that petitioner would be able to return to work.
Dr. William E. Smith examined petitioner on behalf of defendant on March 30, 1965. He was unable to detect any objective evidence of significance and he felt that petitioner was capable of returning to his former occupation as a laborer.
Dr. Thomas Campanella, an orthopedic surgeon, first examined petitioner in November of 1964 at the request of Dr. Rosen. He found definite muscular spasms during the period he treated petitioner, even on the same day that Dr. Smith found none. Dr. Campanella examined the petitioner on the day of the trial and he found muscle spasms at the time and stated that petitioner was disabled to go to work and perform his duties as a construction worker. Dr. Campanella testified that the symptoms were objective. He stated that the muscle spasm which he had found both on his prior examinations and at his examination on the date of the trial were involuntary. In his testimony, Dr. Campanella testified that he would not recommend petitioner to be *839 employed as a construction worker, as he was unable to look up or lift objects.
One interesting aspect of this case was the action of defendant in employing private detectives to investigate petitioner to determine whether or not he was able to perform heavy manual labor. These detectives went out to the home of petitioner on two or three occasions and took motion pictures of petitioner. These motion pictures were shown before the Trial Court and in the presence of Dr. Campanella. These pictures depicted the petitioner in the process of plowing in his garden. The evidence reflects, however, that another individual by the name of George Alexander had plowed or broken up the garden of petitioner, after which petitioner did do a bit of work in turning the plowed ground into rows and smoothing them over. It was the testimony of petitioner as well as his son that on the day the motion pictures were taken, petitioner was showing his boy how to smooth or make rows in the garden. This was only a small country garden of some fifteen rows, each row approximately one acre in length.
In his testimony regarding the motion pictures, Dr. Campanella said that the petitioner could do work of the nature which the films depicted him doing. In these motion pictures he was only walking behind the plow, or discing machine, which was pulled by a mule. Dr. Campanella said that petitioner could do this without pain so long as his back was in a bent or stooped position. He testified that the reason petitioner could not do heavy construction work was that he could not look up or lift heavy things without pain.
There is filed in the record one 8 x 10 photograph which shows petitioner standing in his garden. He is standing almost erect engaged in lighting a cigarette. This picture indicates his shoulders are stooped. One interesting fact about this picture is that his shirt and trousers are relatively free of perspiration. Had petitioner been engaged in the strenous work of plowing a field for a period of some two hours as indicated by defendants, we feel that he would have been dripping with perspiration. The photograph was taken on July IS, 1965.
In view of the exhaustive and very competent testimony by Dr. Campanella, we feel that the Lower Court was correct in holding that the petitioner is totally and permanently disabled to resume his occupation as a heavy construction worker. However, in view of the conflicting medical reports which are filed in the record and copies of which had been furnished defendants, we do not feel that the failure of defendants to pay weekly compensation was of such an arbitrary and capricious nature as to entitle petitioner to penalties and attorney fees. The strong evidence of disability did not appear until trial of the matter.
In its judgment below, the Lower Court awarded Dr. Thomas Campanella expert fees at the sum of $125.00, to be taxed as costs. In its answer to this appeal, petitioner asked that these expert fees be increased. We feel that due to the exhaustive testimony of Dr. Campanella, as well as his testimony and interpretation of the motion pictures which were shown, that his expert fees should be increased to the sum of $200.00.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to increase the expert fees allowed for Dr. Thomas Campanella to the sum of $200.00, to be taxed as costs, and as amended, the judgment of the Lower Court will be affirmed. All costs of this appeal shall be paid by defendants.
Judgment amended and affirmed.